| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY **Caption in Compliance with D.N.J. LBR 9004-2(c)** | |
| In Re: Myla Williams, Debtor. | Case No. 15-33283 (MBK) Chapter 7 |
| Law Offices of William J. Courtney, LLC, Firm, v. Myla Williams, Debtor. | Adv. Pro. No. 16-01200 (MBK) |

## MEMORANDUM DECISION

This matter comes before the Court upon the Complaint filed by the Law Offices of William J. Courtney, LLC (the "Firm"). The Complaint objects to the discharge of debt owed to the Firm by Debtor, Myla Williams ("Debtor") pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B). The Court conducted the trial in this matter on May 16, 2018, and June 6, 2018. Throughout the trial, the Court accepted several exhibits into evidence and heard testimony from Debtor and Mark G. Yates ("Mr. Yates"), an attorney with the Firm who represented the Debtor in her underlying matrimonial matter. The Court also has received and reviewed the parties' post-trial submissions. For the reasons expressed below, the Court grants judgment in favor of the Debtor. The Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## I.      Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.

## II.      Summary of Issues

In brief, this case revolves around the Debtor's representations regarding her employment and financial condition and the impact which these representations had on the Firm's decision and obligation to provide legal services to the Debtor in her state court action.  Specifically, the Firm asserts that the Debtor made false representations—both written and otherwise—regarding her employment, which induced the Firm to continue to represent the Debtor and incur legal fees.  Additionally, the Firm alleges that the Debtor made false representations to the state court regarding her ability to afford an attorney, and, as a result, the state court did not permit the Firm to withdraw from representation.  The Firm argues that Debtor's misrepresentations constitute fraud under 11 U.S.C. § 523(a)(2), and, therefore, the debt owing for legal services rendered is nondischargeable.

## III.      Background and Procedural History

On or about June 11, 2013, the Debtor engaged the services of the Firm to represent her in a divorce proceeding initiated by her former spouse, Anthony Papariello, in the Family Part of the Superior Court of New Jersey, Morris County (the "Family Court").  The terms of the engagement

2

of the Firm's legal services were set forth in an initial retainer agreement.  The Debtor and Anthony

Papariello were divorced in October of 2013 and the parties agreed to joint legal custody of the

children, with the Debtor designated as the parent of primary residence for the two minor children

born of the marriage.

Subsequent to the divorce, the Debtor engaged the Firm to file an application with the

Family Court seeking permission to remove the children from the State of New Jersey, so that she

and the children could reside full-time in the State of Virginia.  At that time, the Debtor represented

to both the Firm and Family Court that she had secured an offer for full-time employment from

Hopkins Real Estate Group ("HREG") in Virginia at an annual salary of $50,000.  The Debtor

certified that her employment was set to commence on January 2, 2014.  Notwithstanding

opposition to the application from the Debtor's former spouse, the Family Court granted the

Debtor's request and, on December 17, 2013, entered an interim order permitting her to move to

Virginia with the children on a temporary basis and scheduled a final plenary hearing to be

conducted, along with an immediate expert evaluation. Family Court Interim Order, December 17,

2013, P-6.

Despite her earlier representations, the Debtor did not commence work on January 2, 2014,

and, instead, began working for HREG on a part-time basis at a reduced rate of pay.  Nevertheless,

in her Certification, dated February 17, 2014, submitted to the Family Court in connection with a

child care issue, the Debtor again certified that she was employed on a "full-time basis" and

earning $50,000 per year. Second Certification to the Family Court, P-11. The Firm first learned

of the Debtor's change in employment status toward the end of February 2014, and requested she

execute an Amended Retainer Agreement, as well as a Certification to the Family Court explaining

that exigent circumstances had prevented her from commencing work. Amended Retainer

Agreement, March 31, 2014, P-17; Second Certification to the Family Court, February 17, 2014,

P-11. When the Firm presented the Debtor with the Amended Retainer Agreement, it reinforced

and stressed to her the importance of keeping the Firm informed of changes in her employment

status and any other matter which could affect her case or its representation.  At the same time, the

Firm agreed to accept monthly installment payments against the Debtor's outstanding legal fees

and, with help from her family, the Debtor began making monthly payments in the amount of

$5,000.  Shortly thereafter, in an email dated April 22, 2014, the Debtor confirmed that she would

be employed on a full-time basis with an annual salary of $50,000 effective May 1, 2014. Email

from Mr. Hopkins, P-14.

Around June 14, 2014, the Debtor ended her employment with HREG.  The Debtor opted

not to inform her counsel, the Family Court, or her ex-husband of the change in her employment.

The Firm contends that it did not learn of the Debtor's lack of employment until January 6, 2015,

and that, at all times from June 15, 2014 through January 6, 2015, it believed that the Debtor was

employed on a full-time basis by HREG at an annual salary of $50,000.  During this time period,

the Debtor continued to pay the Firm $5,000 per month, the Firm continued to represent the Debtor

in her custody dispute, and the Debtor incurred additional fees for—among other things—email

correspondence, arrangements regarding the expert evaluation, and preparation for the plenary

hearing to aid the Family Court in rendering a final decision on the Debtor's application to relocate

with the children to Virginia.

After learning that the Debtor had not been employed full-time with HREG since June 14, 2014, the Firm prepared, and the Debtor executed, another Certification dated February 12, 2015. February 2015 Certification, P-7. The stated purposes of this February 2015 Certification were to verify certain representations that the Debtor made to the Firm, and to induce the Firm to continue its representation.[2] P-7. In her Certification, the Debtor explained that she took a leave of absence from HREG in June 2014 to pursue an insurance sales opportunity.  The Debtor further certified that despite her best efforts, she was unsuccessful in this venture.   In the February 2015 Certification, the Debtor also certified that she resumed employment with HREG from October 2014 through December 19, 2014. P-7. The Debtor admitted that she did not promptly notify the Firm of the changes in her employment status, in large part, because of her concern that she would be forced to return the children to New Jersey.  Significantly, the Debtor acknowledged that she understood her responsibility to provide full and accurate information to the Firm, promised not to provide any false or misleading information in the future, and certified that, going forward, she promptly would inform the Firm of any changes which could impact the Family Court's final relocation determination.

Despite having secured additional assurances from the Debtor by means of the February 2015 Certification, the Firm waited over a month and then filed a motion to withdraw as counsel on March 18, 2015, citing—among other things—the Debtor's failure to pay fees, failure to comply with discovery requests, and failure to keep the Firm informed of significant life events in violation of the Retainer Agreement.  The Court notes that the Debtor stopped making her monthly

---

[2] Left unsaid by Mr. Yates during his testimony, but patently obvious to the Court, is that the February 2015 Certification was intended to "provide cover" for the Firm and not to further Debtor's legal interests.

payments to the Firm in December 2014.  The Debtor opposed the Firm's motion and explained her efforts to pay the Firm, apologized for failing to promptly inform it of pertinent information, and certified that she was without funds to pay for another attorney. Debtor's Objection and Response to Motion to Withdraw, April 13, 2015, P-29. The Debtor also certified that her family was no longer financially able to contribute to her legal expenses and that she was without funds to do so on her own.  In a May 1, 2015 Order denying the withdrawal motion, the Family Court considered the Debtor's objections, the age of the action, the imminence of trial, the complexity of the issues, the inability of the client to retain substitute counsel, and the prejudice to the parties that granting the motion would cause. Order Denying Withdrawal, P-36. The Family Court specifically noted that the Debtor had expressed an intention to reimburse the Firm for its services, although she was unable to pay all of her expenses at that time.  Accordingly, the Firm was directed by the Family Court to continue its representation and prepare for the imminent final plenary hearing on the issue of relocation.

Shortly before the hearing, an attorney, Lisa DeMarco, Esq., contacted the Firm and indicated that she had consulted recently with the Debtor regarding representation.  The Debtor testified at trial that she had not consulted with DeMarco until after the hearing on the Firm's motion to withdraw.  DeMarco indicated to the Firm that she had been paid by the Debtor's family to assist with the plenary hearing and, shortly thereafter, when pressed by the Firm, the Debtor's stepfather paid the Firm an additional $35,000.  The Firm then represented the Debtor in the plenary hearing with DeMarco and her partner participating as "trial consultants."  The plenary hearing took place over nine separate days between May 8, 2015, and June 30, 2015.  Ultimately,

the Family Court denied the Debtor's application to move the children permanently to Virginia and ordered that the children be returned to New Jersey.  The Firm continued to render services to the Debtor until approximately August 30, 2015, at which point the Firm was permitted to withdraw from representation and file a substitution of counsel.  The Firm states that the Debtor's unpaid balance totaled $115,809.70 as of November 10, 2015.

The Debtor filed for bankruptcy under chapter 7 of the Bankruptcy Code on December 13, 2015.  The Firm then filed the instant adversary proceeding in which it seeks an Order declaring the debt owed for legal fees to be nondischargeable.  The parties engaged in motion practice and, on July 24, 2016, the Court granted, in part, the Debtor's Motion to Dismiss.  As a result, the Court proceeded to determine at trial only Counts II and III of the complaint—which challenge dischargeability under § 523(a)(2)(A) and § 523(a)(2)(B), respectively.

In Count II, the Firm asserts that the debt should be excepted from discharge pursuant to § 523(a)(2)(B) because the Debtor made false written statements regarding her family's financial condition.  In Count III, the Firm initially alleged that the debt was nondischargeable solely based on § 523(a)(2)(A).  However, as discussed in detail below, the Firm seeks to amend this Count to conform with the proofs established at trial.  Specifically, the Firm breaks the Count into three separate time periods: (1) effectively abandoning its claims for unpaid fees due prior to June 15, 2014; (2) seeking nondischargeability under § 523(a)(2)(B) for unpaid fees incurred from June 15, 2014 through January 6, 2015; and (3) seeking nondischargeability under § 523(a)(2)(A) for unpaid fees incurred for services rendered from January 7, 2015 through August 30, 2015.

7

## IV.    Legal Discussion

### A.  Motion to Amend

As referenced, in its Complaint the Firm seeks a ruling of nondischargeability in Count III predicated solely under § 523(a)(2)(A).  However, in it post-trial submission, the Firm seeks to amend the Complaint to conform with the proofs established at trial.  Pertinently, in Count III the Firm alleges that the Debtor is in violation of § 523(a)(2)(B) for the period of June 14, 2014 through January 7, 2015, because the Debtor failed to update her previous written statements regarding her employment status.  Second, the Firm alleges that the Debtor is in violation of § 523(a)(2)(A) for the period of January 7, 2015 through August 28, 2015, because the Debtor made false statements regarding her past employment.

### 1.  Standard for Post-Trial Motion to Amend[3]

Federal Rule of Bankruptcy Procedure 7015 expressly adopts Federal Rule of Civil Procedure 15 to adversary proceedings.  Rule 15(b)(2) of the Federal Rules of Civil Procedure allows for the amendment of a complaint to conform to the evidence offered at trial, as long as the parties consent either expressly or impliedly. *See* FED. R. CIV. P. 15(b)(2).  "The rule is applicable only where it clearly appears from the record that an issue not raised in the pleadings and not preserved in the pretrial order has in fact been tried and that this procedure has been authorized by express or implied consent of the parties." *Schultz v. Cally*, 528 F.2d 470, 475 (3d Cir. 1975); *see also Lischner v. Upper Darby Twp.*, No. 05-4546, 2007 WL 2173393, at *2 (E.D. Pa. July 27,

---

[3] In her brief in opposition, the Debtor asserts that FED. R. BANKR. P. 7009 – which adopts FED. R. CIV. P. 9 – is the applicable rule. However, Federal Rule of Bankruptcy Procedure 9 governs pleadings in special matters and it does not address amendments.

2007).  The Third Circuit has set forth factors to be considered when determining whether a party

impliedly has consented to the amendment of a pleading.  *See Addie v. Kjaer*, 737 F.3d 854, 867

(3d Cir. 2013).  Namely, courts should look to "whether the parties recognized that the unpleaded

issue entered the case at trial, whether the evidence that supports the unpleaded issue was

introduced at trial without objection, and whether a finding of trial by consent prejudiced the

opposing party's opportunity to respond." *Id.* (citing *Douglas v. Owens,* 50 F.3d 1226, 1236 (3d

Cir. 1995)) (internal quotations omitted).  In this analysis, the critical factor to be considered is

whether the Debtor had adequate notice that the implied claim was being tried.

### 2.  Analysis

Upon examination of the record, the Court finds that although § 523(a)(2)(B) was not raised

or referenced in Count III of the original complaint, the issue of the Debtor's written

representations regarding her employment has been fully litigated.  Furthermore, the factors laid

out in the *Addie* decision weigh in favor of allowing the amendment.

The Firm's amendment comes in response to the Supreme Court's decision in *Lamar,*

*Archer & Cofrin, LLP v. Appling*. 138 S. Ct. 1752, 201 L.Ed.2d 102 (2018).  The Court in *Appling*

held that a statement about a single asset can be a statement pertaining to the debtor's financial

condition, as such statements have a direct relation to, and impact on, a debtor's overall financial

condition.  *Id*. at 1761.  Here, the Firm's original complaint was based on the case law that existed

at the time the complaint was filed, which preceded the *Appling* decision.  At that time, the Firm

had good reason to believe the Debtor's statements pertaining to her employment were not

statements regarding her overall financial condition.  Thus, the addition of § 523(a)(2)(B) to the

complaint is not intended to correct an omission, but rather, to supplement in conformity with developing case law. The parties and the Court discussed the imminence of the *Appling* decision and collectively decided to wait until that decision was released before this Court would issue a final ruling in this case.  The parties recognized prior to trial that the Firm's claims could rest on statements that—because of the pending Supreme Court decision in *Appling*—might be considered statements regarding the Debtor's financial condition and fall under § 523(a)(2)(B).  Thus, the Debtor was well aware that a new issue was entering the trial, satisfying the first *Addie* test factor.

The Court further rules that the Firm has satisfied the second *Addie* factor.  The Debtor did not object to the introduction of emails regarding her employment as evidence during trial.  This is a significant point because the emails were introduced to establish a written record, which should be regarded as a signal to the Debtor that the Firm was simply not resting on an "oral misrepresentations or false pretenses" argument.  The emails functioned to place the Debtor on notice that the Firm was raising the issue relative to false written statements about the Debtor's financial condition before the Court.  Thus, the Debtor is deemed to have consented impliedly to having the issue tried. This Court is mindful that the Supreme Court in *Addie* warns that, "an issue has not been tried by implied consent if evidence relevant to the new claim is also relevant to the claim originally pled, because the Debtor does not have any notice that the implied claim was being tried." *Addie*, 737 F.3d at 867.  In this case, some of the evidence relevant to the new claim under § 523(a)(2)(B) is also relevant to the initial claim under § 523(a)(2)(A).  Nevertheless, considering all the factors, the Court finds that the Debtor received adequate notice that the Firm was seeking to pursue a new claim under § 523(a)(2)(B).

The third and final factor of the *Addie* test again weighs in favor of permitting amendment. The Debtor will not be prejudiced by the amendment because she had ample opportunity to argue the issue at trial. For the foregoing reasons, the request to amend Count III of the complaint shall be granted.

## B. Count III

Count III of the Firm's complaint fails in its entirety. The Firm has demonstrated neither the Debtor's intent to deceive nor the requisite reliance necessary to succeed under either § 523(a)(2)(A) or § 523(a)(2)(B).

### 1.  § 523(a)(2)(B) (June 15, 2014[4] to January 7, 2015)

Under § 523(a)(2)(B), an individual debtor is not discharged from any debt,

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. §523(a)(2)(B). The firm has the burden of proving a § 523(a)(2)(B) claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 285, 111 S. Ct. 654, 658–59, 112 L. Ed. 2d 755 (1991). To succeed, the Firm must show that the writing: (1) is materially false; (2) respects the debtor's financial condition; (3) was reasonably relied on; and (4) was made with intent to deceive. *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995). "The overriding purpose of the

---

[4] The Court notes that the Firm has used both June 14th and June 15th as a starting date for this period. However, this inconsistency does not impact the analysis.

Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide

them with a fresh start. [In that spirit] [e]xceptions to discharge are strictly construed against

creditors and liberally construed in favor of debtors." *Cohn*, 54 F.3d at 1113; *see also In re*

*Williams*, No. 15-23287, 2018 WL 3344174, at *14 (Bankr. D.N.J. July 5, 2018).

"The reasonableness of a creditor's reliance under § 523(a)(2)(B) is judged by an objective

standard, i.e., that degree of care which would be exercised by a reasonably cautious person in the

same business transaction under similar circumstances." *In re Cohn*, 54 F.3d at 1117. To determine

reasonable reliance, a court must consider three factors:

(1) the creditor's standard practices in evaluating credit-worthiness (absent other
factors, there is reasonable reliance where the creditor follows its normal
business practices);
(2) the standards or customs of the creditor's industry in evaluating credit-
worthiness (what is considered a commercially reasonable investigation of the
information supplied by debtor); and
(3) the surrounding circumstances existing at the time of the debtor's application
for credit (whether there existed a "red flag" that would have alerted an
ordinarily prudent lender to the possibility that the information is inaccurate,
whether there existed previous business dealings that gave rise to a relationship
of trust, or whether even minimal investigation would have revealed the
inaccuracy of the debtor's representations).

*Id*.

Here, the Firm alleges that the Debtor made a series of written statements regarding her

financial condition and failed to inform the Firm of her involuntary lay-off, even though she knew

she was under an affirmative duty to do so. In support of this argument the Firm relies on the

following evidence:

- On November 24, 2013, the Debtor acknowledges in an email addressed to
the Firm that she was about to "start a new job." Email to Firm, P-2.

12

- On November 26, 2013, the Firm received an email from the Debtor containing an offer letter from HREG. The letter explains that the Debtor will be working predominantly out of the company's Richmond office in a managerial capacity and will be responsible for recruiting and training new agents – it lists a start date of January 2, 2014 and a salary of $50,000. Offer Email, P-3.
- In a certification to the Family Court of New Jersey dated December 3, 2013 the Debtor again claims to have been offered a job with HREG in Richmond, VA, set to commence on January 2, 2014. First Certification to the Family Court, P-4.
- In a certification to the Family Court of New Jersey dated February 17, 2014, the Debtor again asserts that she was offered a full-time job in Virginia, which allows her the flexibility to perform some of her duties from home. Second Certification to the Family Court, P-11.
- On April 24, 2014, the Debtor forwarded an email from HREG's owner (Mr. Hopkins) to the Firm. Mr. Hopkins' email provides that he is satisfied that the Debtor's personal issues have been addressed and she is available to begin working 50-60 hours a week beginning May 1, 2014 at a rate of $50,000 a year. Email from Mr. Hopkins, P-14.

The Firm suggests that these statements became false once the Debtor was let go on June 14, 2014, because she knew she had an affirmative duty to disclose her change in circumstances and did not do so. The Firm asserts that there can be no doubt the Debtor was aware of her duty to disclose because she was explicitly apprised of this duty by no fewer than two of the attorneys at the Firm on or about February 26, 2014.  Pl.'s Post-trial Br. 10, ECF. No. 57.  Furthermore, the Debtor executed an amended retainer agreement of March 31, 2014, which included in the section devoted to client responsibilities the requirement that clients, "advise their attorneys promptly of any changes in their lives that might reasonably be expected to affect the handling of their matter." P-17. The Firm claims it reasonably relied on the continued truth and accuracy of the Debtor's statements regarding her employment and that the Debtor chose this course of action with the intent to deceive. This argument is unpersuasive. It is well established that failure to perform as

promised, by itself, gives rise to a cause of action for breach of contract, not actionable misrepresentation, fraud, or false pretenses under § 523(a)(2)(A). *In re Giguinto*, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008). Otherwise, almost all debts resulting from the failure to comply with a contract would be sufficient to establish nondischargability. *Id*. Section 523(a)(2)(A) was patently not intended to create such a result. *Id*. A plaintiff must establish that the debtor entered into the contract never intending to comply with the contractual terms. *Id*. (citing *In re Witmer*, 541 B.R. 769, 779 (Bankr. M.D. Pa. 2015)). The Court does not question whether the Debtor failed to adhere to her responsibilities under the executed retainer agreement. However, the breach of a retainer agreement, standing alone, does not give rise to a nondischargable obligation. The Firm must demonstrate that it relied upon Debtor's misstatements or omissions to its detriment and the she intended to deceive the Firm.

As an initial matter, the Court makes no determination regarding the material falsity of the Debtor's written statements. Neither party presented evidence sufficient to convince the Court regarding the truth and accuracy of the Debtor's representations. Indeed, Mr. Hopkins was neither deposed for this litigation, nor examined at trial. Nevertheless, the Court can resolve this claim because the Firm has failed to meet its burden of establishing the intent and reliance elements of a claim under § 523(a)(2)(B). Indeed, the Court bottoms its decision upon the determination that the Firm did not reasonably rely on the Debtor's written statements as a basis for providing legal services, and the lack of proof relative to Debtor's intent to deceive the Firm.

### a. Reliance

The notion that the Firm, a group of sophisticated professionals, relied on the pledge of a $50,000 salary as assurance for the capacity to afford legal fees in excess of $5,000 a month strains credulity. Regardless of whether the Debtor was actually employed by HREG, the Firm was not reasonable in its reliance on the Debtor's representations, because even if the Debtor did have a position at HREG at the income alleged, she would not have been able to afford the legal services. It is unreasonable to accept that a single parent can afford to pay $5,000 a month in legal fees based solely on an income of $4,167 per month ($50,000 ÷ 12) before any taxes or living expenses are deducted.[5]

Also, it is difficult for this Court to conclude that the Firm reasonably relied on the Debtor's statements regarding her employment. The record indicates that the Firm began to question the Debtor's trustworthiness as early as February of 2014, after it discovered she had yet to begin working – at which time the Firm took no action to withdraw from the case. Instead, the Firm compelled the Debtor to sign a new attorney-client retainer agreement stipulating that the Debtor was under an affirmative duty to disclose any change in circumstances. Amended Retainer Agreement, March 31, 2014, P-17. Even after discovering other inconsistencies in early January 2015, the Firm took no steps to withdraw. Rather, notwithstanding its doubts about the Debtor's

---

[5] The Court notes that the record is wanting for evidence with respect to the Firm's standard of practices in evaluating the creditworthiness of a potential client or the economic propriety of taking on a new matter. Likewise, there has been no evidence submitted as to the standards or customs followed by other family law practitioners relative to evaluating a potential client's ability to pay for legal services. Along this same line, the Firm did not introduce any testimony or other documentary evidence with respect to the Firm's due diligence and investigation into Debtor's financial capacity to timely pay invoices. These failures of proof impair this Court's ability to determine reasonable reliance – one of the Firm's critical burdens in this case.

employment status, the Firm opted to wait and did not file a motion to be relieved as counsel until March 18, 2015, within weeks of the trial date.

The Firm explains that the delay in moving to withdraw was necessary as it would have required divulging privileged information to the court. However, this reasoning undercuts the Firm's contention that "but for" Debtor's misrepresentations, they would have ceased providing legal services. If this Court accepts the contention that the Firm's ethical mandate precluded action, then the Firm, by its own admission, did not continue to provide legal services in reliance upon the Debtor's actions or omissions, but rather because it continued to observe its own ethical and professional obligations.  Furthermore, the Firm has represented that on several occasions it advised the Debtor of her duty to divulge any changes in employment to the Family Court. It remains unclear to the Court which duty actually guided the Firm's decision-making relative to withdrawing from the case: the duty to the Family Court to disclose changes in its client's employment, or the duty to secure privileged information.

The evidence before this Court suggests that the Firm generally knew it was taking a risk when it chose to represent the Debtor. Indeed, such risks are inherent in the practice of law, and especially recurrent in family law matters, as is apparent in a review of this Court's own caseload. Despite the Debtor's limited income, the Firm opted to continue representation even after the veracity of her employment was called into question. It seems manifestly evident to the Court that the true reason the Firm did not move to withdraw sooner is because, and only because, it was still receiving monthly payments. Thus, the Debtor's statements regarding her income and employment

– even if materially false – could not have been a genuine consideration in the decision to render legal services, and the Firm's purported reliance on those statements was not reasonable.

### i.   New Rule

The Firm impliedly implores the Court to create a new substantive rule whereby family law practitioners would need not demonstrate reliance in § 523(a)(2) cases. The Firm posits that attorneys who represent clients in litigated New Jersey family matters do not have the ability to freely deny credit over the course of the relationship. Specifically, New Jersey Court Rule 5:3-5(e) states that, "once an attorney enters into the retainer agreement, there are only two ways the attorney may withdraw from the representation, namely, the client must either agree to release the attorney or the court must approve the withdrawal." Within 90 days of trial, family law attorneys are restricted still further and can only withdraw with leave of the court. *Id*. These restrictions on withdrawal from representation in family cases offer significant and valuable protections to litigants engaged in time consuming and expensive litigation. While the restrictions may be irksome to some practicioners,[6] they do not demand a new substantive rule as the Firm impliedly suggests. The Court is mindful that "exceptions to discharge are strictly construed against creditors." *Cohn*, 54 F.3d at 1113. Therefore, the restrictions imposed on family law attorneys do not amount to an adequate substitute for reliance as required under § 523(a)(2).

---

[6] By no means does this Court suggest that the Firm holds any reservations relative to compliance with the New Jersey Court Rules. Moreover, the record confirms that in all respects the Firm's representation was professional, competent and vigorous.

### b.  Intent

Likewise, the Firm has not demonstrated the Debtor's intent to deceive, necessary to support a claim under §523(a)(2)(B). To succeed in a claim under § 523(a)(2)(B), a Firm must show by a preponderance of the evidence that a debtor possessed the requisite intent to deceive. Because a debtor will rarely admit to intentional deception, the intent is generally inferred from totality of the circumstances. *In re Bocchino*, 794 F.3d 376 (3d Cir. 2015); *see also In re Chung-Hwan Kim*, No. 12-30363 VFP, 2018 WL 671467, at *28 (Bankr. D.N.J. Jan. 31, 2018) (collecting cases and observing that, because a debtor will rarely admit to acting with an intent to deceive, courts may consider circumstantial evidence regarding the debtor's intent); *In re Altieri*, No. 11-12819, 2012 WL 3595298, at *4 (Bankr. D.N.J. Aug. 20, 2012) (holding that "courts may infer the element of intent based on circumstantial evidence").  In this case, the Court notes that the Firm received multiple $5,000 payments from the Debtor throughout the period of June 15, 2014 to January 7, 2015. Several other $5,000 payments were also made outside of this period, and a $35,000 payment was made on May 5, 2015. Notably, the $35,000 lump payment was made after the Firm's motion seeking to withdraw was denied by the Family Court. These payments, although far short of the amounts owing, confirm that the Debtor intended to pay for the services rendered, and weigh against the Firm's argument that the Debtor misrepresented her financial situation in order to obtain such services. The Firm's post-trial brief elucidates the Debtor's intent still further:

> [Debtor] knowingly willfully failed to discloses [sic] her involuntary lay-off by HREG in order to deceive the [Firm] in an effort [to] avoid potentially being ordered to return her children to New Jersey.

Pl.'s Post-trial Br. 10, ECF. No. 57. Therefore, by the Firm's own admission, the Debtor did not

engage in misrepresentation or omissions with the intent to induce the Firm to perform legal

services (if she did at all). Debtor's lack of candor with the Family Court, if any, does not translate

into deceitful intent to defraud the Firm and obtain free legal services. Rather, it appears from the

record that the Debtor at all times was motivated primarily to keep her children with her in

Virginia. Thus, the Court can ascribe no deceitful intent to the Debtor and the Firm's request for

relief under § 523(a)(2)(B) must be denied.

### 2.    § 523(a)(2)(A) (January 7, 2015[7] to August 28, 2015)

For the Firm to prevail under the false representation provision of § 523(a)(2)(A) it must

demonstrate that:

> (1) the debtor made the representations knowing they were false;
> (2) the debtor made the representations with the intent and purpose of deceiving the
>     firm;
> (3) the creditor justifiably relied on the debtor's false representations; and
> (4) the creditor suffered a loss or damage as a proximate consequence of the
>     representation having been made.

*In re Antonious,* 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006) (citing *Field v. Mans,* 516 U.S. 59, 61

(1995)). Section 523(a)(2)(A) of the Bankruptcy Code provides that debts for money, property,

services, or credit obtained by "false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition" are nondischargeable. 11

U.S.C. § 523(a)(2)(A). A false pretense requires proof of an implied misrepresentation promoted

knowingly and willingly that creates a misleading understanding of the transaction. *In re Barnaby*,

---

[7] The Firm uses both January 6th and 7th as the start date for the period in which false pretenses are alleged.
However, this inconsistency has no bearing on this Court's analysis.

No. 05-33096, 2007 WL 750332, at *2 (Bankr. D.N.J. Mar. 6, 2007). "False pretense do[es] not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations for purposes of nondischargeability where circumstances of the case are such that omissions or failure to disclose create a false impression which is known by the debtor." *In re Bernard*, No. AP 14-01261, 2015 WL 4028237, at *7 (D.N.J. June 30, 2015) *(citing Peterson v. Bozzano (In re Bozzano),* 173 B.R. 990, 993 (Bankr. M.D.N.C.1994)). "Failure to disclose material facts on which a transaction depends constitutes false pretenses within the statute." *In re Soliz,* 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996).

This Court is mindful that § 523(a)(2)(A) requires only justifiable reliance and not reasonable. *Field,* 516 U.S. at 72–75 (holding that justifiable reliance is an intermediate standard requiring more than mere reliance but less than reasonable reliance). The Supreme Court has explained that the inquiry is a subjective one, as "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id.* at 71 (quoting RESTATEMENT (SECOND) OF TORTS § 545A, cmt. b (1976)). "The standard of justifiable reliance imposes no duty upon the recipient of the representation to investigate, unless there are circumstances that should arouse suspicion." *Id.* at 73 n.12. The Supreme Court explained that an individual is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 541 cmt. a (1976)).

In this matter, the Firm maintains in the portion of Count III predicated upon § 523(a)(2)(A) that the Debtor perpetrated a false pretense by making false statements regarding her past employment beginning January 7, 2015. The Firm submits that the Debtor repeatedly claimed she was employed on a full-time basis from October 1, 2014, through December 1, 2014. This false narrative, the argument continues, was intended to deceive the Firm into continuing its representation. In reliance, the Firm provided legal services for the period of January 7, 2015, to August 15, 2015. This portion of the Firm's complaint fails for several reasons.

Again, the Court is at a loss in determining the falsity of these representations. Mr. Hopkins was neither deposed nor examined in this trial; moreover, no cancelled paychecks were ever submitted as evidence to the Court. Nevertheless, the Court determines that even if the material falsity element had been satisfied, the Firm again fails to establish the requisite reliance and deceitful intent by a preponderance of the evidence.

The Court already has highlighted the absurdity inherent in relying on monthly income in this context, one where the legal fees alone exceed the Debtor's income before any taxes or living expenses are contemplated. The rationale used by the Court in denying the § 523(a)(2)(B) claim for failure to establish reasonable reliance is likewise applicable here. Although § 523(a)(2)(A) does not require that the Firm's conduct conform to the standard of the reasonable man, as discussed in the *Field* decision, the Firm fails to satisfy its burden regarding the lower standard of justifiable reliance. The Firm was not justified in relying on either the Debtor's written representation or false pretenses that she was gainfully employed because it was patently apparent the Debtor could not afford what the Firm charged from the very outset.

21

Moreover, the Firm has not shown by a preponderance of the evidence that the Debtor intended to deceive it. Rather, as explained previously, it appears from the record that the Debtor intended to pay the Firm, as she made payments to the Firm throughout the representation. Furthermore, the Firm concedes, in its own submissions, that the Debtor made these representations because she was afraid she would have to bring the children back to New Jersey. Pl.'s Post-trial Br. 10, ECF. No. 57. Thus, the totality of the circumstances suggest that it was never the Debtor's intent to trick the Firm into providing services. Rather, at best, the Debtor was motivated by a desire to persuade the Family Court to her allow children to remain in Virginia. For these reasons, the Firm has not satisfied its burdens of proof for establishing nondischargeability under § 523(a)(2)(A) and that portion of Count III of the Firm's complaint must be denied.

### C. Count II

In Count II of the complaint, the Firm alleges that the Debtor made false written statements regarding an insider's (her family's)[8] financial condition, and, as such, her debt should be exempted from discharge pursuant to § 523(a)(2)(B). As discussed in detail above, to prove a claim under § 523(a)(2)(B) a plaintiff must show that the writing was materially false, respects the debtor's financial condition, was reasonably relied on by the plaintiff, and was made with deceitful intent. *Cohn*, 54 F.3d at 1114. For the reasons discussed below, the Firm fails to show the falsity, intent, and reliance necessary to succeed on this claim.

---

[8] This Court makes no determination regarding a step father's *per se* status as insider. However, for the purposes of this Opinion the Court will assume that he qualifies.

In her April 13, 2015 Certification to the Family Court (submitted in opposition to the Firm's motion to withdraw), the Debtor made the following representation:

> Last year I entered a payment plan with my attorneys to pay $5,000 per month and did that to the best of my ability. I have relied heavily on family and friends. Unfortunately for me, *my parents are not financially able to contribute any longer* or sign as guarantors on the amended retainer agreement proposed by my attorney.

Objection and Response to Attorney's Motion to Withdraw, P-29 (emphasis added). The Firm alleges that the Debtor made this statement knowing it was false and with the intent to deceive the Family Court. The Firm further asserts that the Family Court relied on this statement in denying the Firm's motion to withdraw, and that that reliance is enough to satisfy the reliance element of § 523(a)(2)(B) because had the statement never been made, the Firm would have been allowed out of the case as a result of its motion to withdraw. Unable to withdraw from the case, the Firm incurred additional fees from approximately March 18, 2015, until August 28, 2015. The Court remains unpersuaded.

In Debtor's April 13th certification to the Family Court, the Debtor asserts that her parents, upon whom she had been relying heavily for financial support, were no longer financially able to fund her legal representation, or sign her amended retainer agreement as guarantors. Objection and Response to Attorney's Motion to Withdraw, P-29. The Firm argues the falsity of this statement by citing to the Debtor's inconsistent testimony in the bankruptcy trial where the reason asserted for her parent's lack of assistance was bottomed on dissatisfaction with the services rendered, rather than financial inability. The Firm also cites to a hallway conversation where the Debtor's mother expressed to counsel that she would in fact be willing to pay Mr. Yates, but not the Firm as a whole. Additionally, the Firm submits that the payments made by the parents subsequent to

the Debtor's certification are evidence that the Debtor's statements were false. These arguments simply ignore the numerous possible alternative explanations.

The truth or extent of the parents' decision to close the coffers are immaterial. The pertinent inquiry which must be addressed is whether the Debtor was truthful at the time of her statement as to her understanding of her family's inability to pay. The answer remains unclear, as neither party opted to examine Debtor's parents during discovery or at trial. Nor does the $35,000 payment made to the Firm after being pressured by Mr. Yates sway the Court one way or another. The Court has no evidence regarding the Debtor's family's financial resources or ability to pay. This void in the evidentiary record leaves the Court with many unanswered questions. For instance, how do we know where the $35,000 came from? Did the parents have the money sitting in their bank account when the statement was made or did they acquire it after the fact? Did they take out a loan? Did they find it hidden behind a painting in a picture frame? What kind of expenses did the parents have at that time? Most significantly, what did the parents say to the daughter at the time and what was the Debtor's understanding? Finally, the Court has no way of knowing why the parents changed their mind – if they actually did. Based on the evidence the Court does have, it seems just as likely that the parents told the Debtor they could no longer afford to support her and then subsequently changed their minds on the eve of trial. Furthermore, it is unclear under the decision in *Appling* whether a parent's ability to offer financial support constitutes a statement regarding the Debtor's own financial condition. Thus, the Firm has failed to show the Debtor made the materially false statement necessary to prove its claim.

Again, relative to the Firm's burden to establish reliance, this Court chooses not to go beyond the language of the Family Court's denial of the Firm's motion to withdraw. The Family Court cited numerous factors in denying the Firm's motion to withdraw:

> This Court has considered that both the plaintiff and the defendant object to counsel's withdrawal, the age of the action, the imminence of trial, the complexity of the issues, the ability of the client to retain substitute counsel, and the prejudice to the parties and the parties' children that granting counsel's withdrawal would cause.

Order Denying Withdrawal, May 1, 2015, P-36. The Family Court gave no special weight to any single factor. The trial was only two weeks away and that taken alone may have been reason enough to preclude the firm's withdrawal. Regardless, it is apparent from the opinion that the Family Court did not rely solely on the Debtor's financial condition in denying the motion. Thus, there is no indication that the motion would have been granted absent the Debtor's statement about her family's inability to pay.

Moreover, the Firm has not met its burden of establishing the deceitful intent element of the § 523(a)(2)(B) standard. As previously discussed, the totality of the circumstances indicate that the Debtor intended to pay the Firm and may have sought to deceive the Family Court for other reasons. The same rationale weighs against a finding of intent to deceive in the context of a writing regarding her family's financial ability under §523(a)(2)(B). Had the Debtor intended to use fraud to obtain legal services without paying, she would not have made the substantial payments she did during the course of the Firm's representation. Indeed, there is no explanation offered as to why the Debtor arranged for the $35,000 payment, after the court refused to allow the Firm to withdraw. She was under no obligation at this point.  Furthermore, in its Order Denying Withdrawal, the

Family Court found that the Debtor fully intended to pay the Firm. Order Denying Withdrawal,

May 1, 2015, P-36. Therefore, Count II of the Firm's complaint also fails.

**D. Conclusion**

For the aforementioned reasons, the Firm's complaint is denied in its entirety. Debtor's

counsel is directed to submit a form of judgment.


_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: October 12, 2018