UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                                                              609-858-9360
United States Bankruptcy Judge

January 23, 2019

William J. Courtney, Esq.
*Counsel for Plaintiff Law Offices of William J. Courtney, LLC*

Stephen M. Goldberg, Esq.
*Counselor for Debtor-Defendant*

        Re:    Courtney v. Williams,  Adv. Pro No.: 16-1200
                  Case No.: 15-33283

Dear Counsel,

      Presently before the Court is a Motion for Reconsideration (ECF No. 60) filed by Plaintiff Law Offices of William J. Courtney (the "Firm").  The factual background and procedural history of this case are well known to the parties and will not be repeated in detail here.  In relevant part, the Firm filed an adversary proceeding against Debtor-Defendant, Myla Williams ("Debtor") seeking a determination that the debt she owed to the Firm as a result of its representation of Debtor in her state matrimonial proceedings was nondischargeable.  The Court conducted the trial in this matter on May 16, 2018, and June 6, 2018 and reviewed the parties' post-trial submissions.  On October 12, 2018, this Court entered an Opinion granting judgment in favor of the Debtor.  The Firm now seeks reconsideration of that ruling pursuant to Federal Rule of Bankruptcy 9023, which incorporates Federal Rule of Civil Procedure 59(e).  The Debtor filed an Opposition to the motion (ECF No. 63), the Firm filed a Reply (ECF No. 65), and the Debtor filed a Sur-Reply (ECF No. 66).  The Court heard oral argument on this issue on January 16, 2019.  The Court has reviewed all of the parties' submissions and considered the arguments presented during the hearing.  For the reasons discussed below, the motion is denied.

**I.      Standard of Review**

A motion under Federal Rule of Civil Procedure 59(e) is a motion to alter or amend a judgment. "[S]uch a motion should be granted only where the moving party shows that at least one of the following grounds is present: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311 (3d Cir. 2018) (internal quotations and citations omitted).

**II.     Analysis**

In its initial moving papers, the Firm seeks reconsideration of the Court's analysis in two respects. First, the Firm asserts that that debt for fees accrued during the time period from June 14, 2014 through January 6, 2015 should be nondischargeable under § 523(a)(2)(A). Second, they request that the court "re-evaluate [the Debtor's] claim that she was re-employed by HREG from October 1, 2014 to approximately December 1, [2014][1]." *Plaintiff's Brief in Support of Motion for Reconsideration* at 6, ECF No. 60.

However, in the Firm's Reply brief, the Firm addresses and abandons its latter request involving the time period from October 1, 2014 to December 1, 2014:

> [W]ith respect to out [sic] arguments concerning the debtor's assertion of employment between October and December of 2014, we presented these arguments to assist the court in its analysis in the event our relief is granted and a determination needs to be made as to the time span of the debtor's false pretense in order to determine which fees were incurred as a result. If our requested relief is not granted there is no need to consider this argument.

*Plaintiff's Reply Brief* at 6, ECF No. 65. Then, in the concluding section of the brief, the Firm clarifies that it seeks only a determination that the debt incurred from June 14, 2014 through

---

[1] The Court notes that the Firm uses the year "2015" in their submission. However, it is evident based on the record that it means to refer to December of the year 2014.

2

January 6, 2015 is nondischargeable under § 523(a)(2)(A). *Id.* Accordingly, this Court will address only that request.

### A. Basis for Relief under Rule 59(e)

In its submissions, the Firm does not assert a specific basis for relief under Rule 59(e). As set forth above, a motion to alter or amend a judgment under Rule 59(e) is appropriate only if one of three grounds is present, and the Firm does not indicate on which ground its motion is premised. Nevertheless, a careful reading of the Firm's submissions allows the Court to discern the basis for the Firm's request. Nowhere in the Firm's submissions does it assert an intervening change in law or newly available evidence. In fact, during oral argument on this issue, counsel for the Firm clarified that he was not presenting new facts for the Court's consideration. Therefore, the Firm can only be seeking relief based on the third ground for relief under Rule Rule 59(e): the need to correct a clear error of law or fact or to prevent manifest injustice.[2]

### B. Did the Firm preserve a nondischargeability claim in Count III under § 523(a)(2)(A) for debt incurred from June 14, 2014[3] through January 7, 2015?

As discussed in this Court's October 12, 2018 Opinion, the Firm submitted a post-trial brief at the request of the Court on June 29, 2018.[4] In that submission, the Firm sought to amend its Complaint to conform with proofs established at trial and recent Supreme Court case law. *See Lamar, Archer & Cofrin, LLP v. Appling*. 138 S. Ct. 1752, 201 L.Ed.2d 102 (2018). The Firm explicitly requested that Count III of the Complaint be amended so that "[c]laims based on legal fees accruing on or after June 14, 2014 through January 7, 2015 should not be discharged

---

[2] This conclusion is supported by statements made in the Firm's Reply brief in which the Firm asserts that "the court overlooked both factual and legal issues" and refers to other "factual errors." *Reply Brief*, pages 2, 4, ECF No. 65.

[3] As noted in the Court's October 12, 2018 Opinion, the Firm refers to both June 14, 2014 and June 15, 2014 as the start date for the time period in question. This irregularity had no impact on the Court's initial ruling and does not alter the Court's analysis in the present motion.

[4] The Firm's post-trial submission is inaccurately dated June 30, 2015 and was, in fact, received as an attachment to an e-mail on June 29, 2018. In the body of the e-mail, counsel for the Firm explains that he will not file the document on the docket (via ECF) unless so instructed by the Court. Ultimately, the Court filed this post-trial submission on the docket on October 2, 2018. *See* ECF No. 57.

pursuant to § 523(a)(2)(B)." *Plaintiff's Post-trial Brief*, page 5, ECF No. 57. The Firm's brief then addressed in detail the factual scenario of the case, and concluded, "[i]n summary the evidence clearly and convincingly establishes each of the elements under 523(a)(2)(b) [sic] necessary to deny Williams a discharge of the unpaid fees accruing from June 15, 2014 to January 7, 2015." *Plaintiff's Post-trial Brief* at 12. In light of the fact that the Firm's amended Count III presented an argument only under § 523(a)(2)(B) for the fees accrued from June 15, 2014 to January 7, 2015, the Court concluded that no claim under § 523(a)(2)(A) remained for the time period in question.

The Court notes that the Firm's post-trial submission also states on page 13, "[o]f course, should the court conclude that Williams' failure to timely disclose her involuntary lay-off was a false pretense rather that [sic] false statement of financial condition, Williams should nevertheless be denied the benefit of the discharge pursuant to 523(a)(2) **B**) [sic]." *Id.* at 13 (emphasis added). This statement is not accompanied by any other information or analysis. As written, the Court did not, and does not, interpret this statement as an intention to proceed under § 523(a)(2)**(A)** in Count III.

During oral argument on January 16, 2019, Counsel for the Firm argued that the Firm preserved a claim in Count III under § 523(a)(2)(A) for the time period in question, and the Firm points to a brief submitted in response to the Debtor's post-trial brief.[5] The Court has again reviewed this document. Indeed, it discusses nondischargeability under § 523(a)(2)(A); however, it does not provide specific time periods. Instead, it refers generally to the Debtor's silence (in the face of her duty to disclose that her employment had ended) as a "false pretense" under § 523(a)(2)(A). Confusingly, that particular section of the brief concludes by stating, "[a]s noted above, **Count II** of the Adversary Complaint is best analyzed under section 523(a)(2)(A)." *Firm's Response to Debtor's Post-trial Brief*, ECF No. 67 at 10 (emphasis added). Admittedly,

---

[5] The Court notes that this document was never filed on the Court's docket. Nevertheless, it was received via e-mail on August 13, 2018 and was reviewed by the Court. The document has now been docketed. *See Firm's Response to Debtor's Post-trial Brief,* ECF No. 67.

4

there are four paragraphs of this responsive brief which could be liberally interpreted as an intention to preserve a claim in Count III under § 523(a)(2)(A) for fees accrued during the time period in question. *Id.* at 9-10. However, given the Firm's failure to specify time periods, its perhaps mistaken reference to Count II of the Adversary Complaint, and the Firm's specific references and explicit requests to amend to § 523(a)(2)(B) in its direct post-trial submission, the Court concluded that the Firm was proceeding solely under § 523(a)(2)(B) for the time period in question.

To the extent that the Firm intended to preserve a claim under § 523(a)(2)(A) for fees accrued from June 14, 2014 through January 7, 2015 and simply made several typos and failed to adequately explain its position, this claim nevertheless fails based on the same factual findings discussed in this Court's October 12, 2018 Opinion.

**C. Analysis under § 523(a)(2)(A) of nondischargeability for debt incurred from June 14, 2014 through January 7, 2015**

As an initial matter, this Court finds that the Debtor's failure to timely advise the Firm of her involuntary layoff necessarily relates to her financial condition and, thus, is properly analyzed under § 523(a)(2)(B). *See Appling*, 138 S. Ct. 1752. The facts presented during the trial and discussed in Plaintiff's post-trial brief all conform with, and seemingly anticipate, this conclusion. Notwithstanding, even if the Debtor's conduct is analyzed as a "false pretense" under § 523(a)(2)(A)—in which the Debtor allegedly intends to mislead the Firm with the aim of obtaining continued legal services despite her loss of employment—the record does not support a finding of nondischargeability.

For a party to prevail under the false representation provision of § 523(a)(2)(A) it must demonstrate that:

(1) the debtor made the representations knowing they were false;

(2) the debtor made the representations with the intent and purpose of deceiving the creditor;

(3) the creditor justifiably relied on the debtor's false representations; and

5

> (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made.

*In re Antonious,* 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006) (citing *Field v. Mans,* 516 U.S. 59, 61 (1995)). "In general, this test applies for all three grounds listed in section 523(a)(2)(A) even though the elements for each vary slightly." *In re Antonious*, 358 B.R. at 182. An omission or failure to disclose a material fact can constitute a misrepresentation for purposes of nondischargeability under § 523(a)(2)(A). *See, e.g., In re Bernard*, 14-01261, 2015 WL 4028237, at *7 (D.N.J. June 30, 2015). Thus, the Firm concludes that the Debtor's failure to advise them of her involuntary termination satisfies the first prong of a false misrepresentation or false pretense. Even so, the Court determines that the Firm has failed to establish the reliance and intent elements necessary to succeed on a nondischargeability claim under § 523(a)(2)(A).

### 1. Reliance

In its motion for reconsideration, the Firm contends that it relied on the Debtor's representation of employment—not as a means of determining to continue representation because the Debtor was fiscally fit to pay—but as a basis for providing representation in general.[6] Essentially, the Firm's argument is: had it been made aware timely of the Debtor's involuntary layoff in June of 2014, it would not have supported the Debtor's position and rendered the services it did. In making this argument, the Firm necessarily implies that, had the Debtor told them that she was no longer employed with HREG, the Firm would have discontinued further representation. However, there is no evidence to suggest that the Firm would have immediately stopped representing the Debtor upon learning of her loss of employment. In fact, the record before the Court indicates the opposite, as evidenced by the fact that the Firm waited more than 3 months after learning of her job loss before filing a motion to

---

[6] "In this respect while the Plaintiff's 'reliance' on William's employment was . . . relevant as a source of funding for the legal fees, it was far more important in the firm's continuous evaluation of the merits of her claim; the competency of the evidence; and the monitoring of Ms. William's compliance with the terms of the December 17, 2013 Order granting her permission to move to Virginia with her children on a temporary basis." *Plaintiff's Brief in Support of Motion for Reconsideration*, page 5, ECF No. 60.

withdraw as counsel (the Firm learned of her termination on January 7, 2015, but did not file its motion to withdraw until March 18, 2015).

The reality of the situation is that the Firm was the Debtor's legal representative—hired and paid to support the Debtor's interests in her Family Court proceedings and, as part of the representation, to assist her in her efforts to move to Virginia with her children. Admittedly, the Debtor stopped working for HREG in June of 2014; however, the loss of her job did not signal the end of the Firm's representation or of the effort to keep the children with the Debtor in Virginia. It is contrary to common sense to assume that a change in job status results in an immediate change in the relocation arrangement. The Debtor could have, and did, pursue other employment opportunities and, as the Debtor's legal representative, the Firm had a duty to continue to zealously represent her. Thus, the record suggests that had the Firm been aware of her termination, the Firm would have continued to support the Debtor in her effort to keep the children with her in Virginia—albeit through a different strategy.

Further, the Court notes that the Firm's representation of the Debtor was not limited solely to her application to relocate. They were hired—and had a duty—to represent the Debtor's interests in general in her divorce and Family Court proceedings. In fact, the billing records, admitted into evidence at trial, indicate that a significant portion of the work done during the time period in question was not exclusively related to the issue of the Debtor's relocation and new job. Many of the hours billed were spent addressing the typical issues that arise in the course of a divorce proceeding, such as visitation, child care, medical insurance issues, etc. *See Plaintiff's Exhibit P-46* (the Firm's billing records for services rendered from June 2014 to January 2015).

Moreover, as the Firm points out, absent consent from the Debtor, the Firm would have had to file a motion before the Family Court seeking permission to withdraw from the case. Until permitted to do so by court order, the Firm lawfully would have been obligated to continue to represent the Debtor and would have incurred fees regardless. This fact further undercuts the

7

Firm's position that debt would not have accumulated had the Debtor disclosed her involuntary termination.

Finally, the Court notes that during the time period in question, the Firm was receiving substantial payments. This again weighs against the Firm's assertion that it would not have continued representation of the Debtor had she informed them of her job loss.

In sum, the Firm did not establish the reliance necessary to succeed on a nondichargeability claim under § 523(a)(2)(A). The Court remains unpersuaded that the Firm relied on the Debtor's employment with HREG as a basis for providing representation. Rather, the Firm appears to have been motivated by its professional and legal obligations as the Debtor's counsel of record, and by the fact that the Firm was being paid during a majority of the time period in question. To the extent the Firm did in fact rely on the Debtor's employment with HREG during the time period at issue, the Court finds that said reliance was not justifiable given the circumstances. *See Field,* 516 U.S. at 72–75 (holding that justifiable reliance is an intermediate standard requiring more than mere reliance but less than reasonable reliance). It is unjustifiable for the Firm to take the position that it would represent the Debtor, in any capacity, only if she remained employed with HREG. In making this determination, the Court notes that it would be inappropriate and unacceptable for a lawyer to abandon immediately a client solely because of a change in job status—especially with regard to pending litigation that had commenced prior to the job loss.

In light of the failure to establish justifiable reliance, any claim the Firm may have had under § 523(a)(2)(A) for the time period in question would fail. Accordingly, the Firm has not demonstrated any error of law or fact or manifest injustice that would warrant alteration or amendment of this Court's October 12, 2018 Order.

### 2. Intent

Having determined that the facts of the case do not satisfy the reliance element of a claim under § 523(a)(2)(A), the Court need not make a determination as to the element of intent. Nevertheless, the Court will provide a brief discussion.

In its brief seeking reconsideration, the Firm acknowledges the Court's previous findings regarding intent. Namely, in the October 12, 2018 Opinion, the Court found that the Debtor's silence as to her job termination did not translate to a deceitful intent to defraud the Firm and obtain free legal services sufficient to satisfy the intent element of either subsection of §523(a)(2). In the Court's view, the totality of the circumstances indicated that the Debtor intended to pay the Firm—as evidenced by payments she made throughout the representation—and that the Debtor's primary motivation for failing to disclose her job loss was a desire to keep the children in Virginia. In its brief seeking reconsideration of this issue, the Firm does not assert any clear error of law or fact, or a manifest injustice. Rather, the Firm expresses disagreement with the Court's previous findings regarding intent. "Disagreement with the district court's decision is inappropriate on a motion for reconsideration, and should be raised through the appellate process." *Ali-X v. Power*, 10-2990, 2014 WL 2435619, at *2 (D.N.J. May 29, 2014) (citing *Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp.,* 996 F. Supp. 409, 442 (D.N.J. 1998); *see also In re Energy Future Holdings Corp.,* 575 B.R. 616, 628 (Bankr. D. Del. 2017), *aff'd*, 904 F.3d 298 (3d Cir. 2018); *In re W.R. Grace & Co.*, 556 B.R. 113, 118 (Bankr. D. Del. 2016). Accordingly, reevaluation of the Court's ruling on intent is not warranted under Rule 59(e). Nevertheless, the Court will address briefly an argument raised in the Firm's motion.

In an effort to change the Court's mind regarding intent, the Firm analogizes the Debtor's failure to disclose her job termination to a litigant who is dishonest about a personal injury case. The Firm asks,

> What if Ms. Williams had retained the firm to represent her to recover monetary compensation for injuries sustained in an accident that she knew did not occur[?] Would she be absolved of her obligation to compensate the firm because her primary intent was to defraud the opposing party rather than 'tricking' the law firm into providing legal services under false pretenses?

*Plaintiff's Brief in Support of Reconsideration*, page 4, ECF No. 60. The Court is not persuaded by this analogy and finds the circumstances of this case distinguishable from that of a personal injury action. Namely, in a personal injury action, the entire basis for the representation is the

9

injury or accident. In divorce proceedings, however, custody of the children is just one of many issues for which a party needs legal representation. A law firm must also represent the client in other divorce-related issues and, as set forth above, the Firm did perform work for the Debtor during the time period in question on issues which were not related solely to her relocation—such as visitation, child care, and medical insurance issues. Further, in a personal injury action, once the legal representative became aware that the underlying injury was fraudulent, the attorney would no longer be required to represent the party as there would be no valid cause of action. In contrast, as previously discussed, an attorney in divorce proceedings would still be obligated to represent a litigant upon learning that she lost her employment. Thus, had the Firm been aware that the Debtor no longer was employed with HREG, fees would still have accrued, however the nature of the work, and the strategy utilized to promote the Debtor's goal of keeping the children in Virginia would have been different.

The Firm further argues that the Debtor's relocation was the central issue in the case. As such, the Firm contends that the Debtor remained silent not only to trick the Family Court but also, in part, to deceive the Firm into continuing to provide legal services. However, the Debtor's intent can only be extended so far. This Court remains persuaded that the Debtor's primary intent in failing to disclose her termination was to keep the children with her in Virginia—not to obtain free legal services. It may be argued that the Debtor remained silent, in part, to pursue a strategy that she believed gave her the best opportunity to allow her to remain in Virginia with the children. However, nothing in the record suggests that the Debtor intentionally omitted information as a means to mislead the Firm into providing legal services in general.

Furthermore, as explained in the October 12, 2018 Opinion, the record in this case indicates the Debtor actually intended to pay the Firm, as evidenced by a $35,000 payment *after* the Firm was denied permission to withdraw. In its motion, the Firm does not show any error of law or fact or manifest injustice which would warrant reconsideration of this Court's prior determination regarding intent.

10

**III.    Conclusion**

For the foregoing reasons, the Firm has failed to demonstrate that alteration or amendment of this Court's October 12, 2018 Opinion is warranted under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e).  Accordingly, the Firm's motion is denied.  The Court will enter an appropriate Order.

*[signature]*

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Cc:    Filed on CM/ECF